UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NATHANIEL ROBINSON,

        Plaintiff,

  v.                                     Case No. 17-C-349

KEVIN KREMBS,
TINA WATTS, and
CATHERINE OBIORA,

        Defendants.

---

### ORDER

---

Plaintiff Nathaniel Robinson, a Wisconsin state prisoner who is representing himself, filed a complaint alleging that defendants violated his civil rights. This case is currently assigned to U.S. Magistrate Judge David E. Jones; however, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was randomly referred to a U.S. District Court judge for the limited purpose of screening the complaint. This case will be returned to Judge Jones following the entry of this Order.

This matter is before the Court on plaintiff's motion to proceed without prepayment of the civil case filing fee (ECF No. 2) and for the screening of his complaint (ECF No. 1).

#### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was incarcerated when he filed his complaint. The PLRA gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with

certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. On March 14, 2017, Judge Jones assessed an initial partial filing fee of $37.62. (ECF No. 5.) Plaintiff paid that fee on March 24, 2017. The Court will grant plaintiff's motion to proceed without prepayment of the full filing fee. He is required to pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## SCREENING OF THE COMPLAINT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give a plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction.

2

*See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that, while incarcerated at the Milwaukee Secure Detention Facility (MSDF), he complained of severe stomach pain. In December 2014, defendant Dr. Kevin Krembs, a physician employed by the Wisconsin Department of Corrections and assigned to MSDF, referred plaintiff to the "University of Wisconsin Oncology." (ECF No. 1 at 3.) During his follow-up consultation with plaintiff, Dr. Krembs informed plaintiff that he had terminal cancer. Plaintiff alleges that Dr. Krembs said he was "confident in his medical opinion." (*Id*.)

Dr. Krembs asked defendant Tina Watts, the MSDF health services manager, to join the consultation. According to plaintiff, Watts expressed her condolences. She informed plaintiff that chemotherapy and radiation were an option, but they offered only "a glimmer of hope." (*Id.*) Dr. Krembs agreed that they could be "helpful" but that they "would only prolong the inevitable at best." (*Id.*) Watts told plaintiff that she would "personally champion his cause with respect to gaining a compassionate release because it was not her desire to see him anguish and waste away in prison." (*Id.*) Dr. Krembs informed plaintiff that he did not need to worry about suffering because he would provide him with "the best pain mediation known to man." (*Id.*) Dr. Krembs prescribed several medications, including Hydrocodone and Oxycontin.

A week or so later, plaintiff met with Dr. Krembs and received a full examination, including a rectal examination. Dr. Krembs informed plaintiff that he continued to feel severe pain because of his sitting bones. Dr. Krembs allegedly told plaintiff that he was afraid plaintiff might also have bone cancer.

3

A few days later, plaintiff again met with Dr. Krembs and Watts. Watts allegedly told him that she would begin the compassionate release process after a biopsy was completed. Dr. Krembs informed plaintiff that he would begin receiving Morphine. According to plaintiff, Watts asked Dr. Krembs if Morphine was appropriate given that plaintiff had been unable to defecate and was in severe pain as a result. Dr. Krembs allegedly stated that plaintiff's bowel complications were related to his cancer.

Near the end of December 2014, plaintiff was sent to St. Luke's Hospital for a biopsy. Plaintiff states that the biopsy was unsuccessful because the target area was never reached. Plaintiff states that the biopsy experience "was horrible." (*Id.* at 5.)

About four days later, plaintiff attempted suicide. He was rushed to St. Luke's Hospital. After he returned to the institution, he was placed on suicide watch.

On December 29, 2017, plaintiff was escorted to the health services unit, where he met with defendant Catherine Obiora (plaintiff also spells her last name Obiore in the body of his complaint), who was the acting nurse practitioner. According to plaintiff, Obiora informed him that he did *not* have cancer, and she stopped the morphine because she said it was unnecessary. Obiora told plaintiff that Dr. Krembs would evaluate plaintiff's pain medication upon his return. Plaintiff was then removed from observation status.

On January 5, 2015, plaintiff met with Dr. Krembs. Dr. Krembs allegedly informed plaintiff that Obiora had overstepped her bounds and made a drastic error. He said that she had misread the biopsy report. Dr. Krembs informed plaintiff that he *did* have terminal cancer and he put plaintiff back on morphine. Plaintiff was again placed on suicide watch.

4

Later that month, plaintiff was transferred to Dodge Correctional Institution, where he continued with the morphine and Percocet prescribed by Dr. Krembs. On January 13, 2015, plaintiff was transported to University of Wisconsin to meet with Dr. Howard Baily (who is not a defendant). Dr. Baily informed plaintiff that he was almost positive that plaintiff did *not* have cancer and that his pain was caused by severe constipation.

After plaintiff returned to Dodge, he was seen by Dr. Bruno (who is not a defendant). Dr. Bruno told plaintiff he did not have cancer. He informed plaintiff that his inability to have a bowel movement was caused by the "heavy narcotics" that plaintiff had been taking "for no reason." (*Id*. at 6.) Dr. Bruno removed plaintiff from the morphine and Percocet, ordered a liquid diet and heavy laxative regimen, and began the use of suppositories and enemas to help plaintiff have a bowel movement.

Plaintiff alleges that he has suffered bouts of depression and attempted to commit suicide on "numerous" occasions as a result of the misdiagnosis.

## THE COURT'S ANALYSIS

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). *Id*. "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Arnett v. Webster*, 658 F.3d 742, 749 (7th Cir. 2011) (quoting *Collignon v. Milwaukee Cnty*., 163 F.3d 982, 988 (7th Cir. 1998)). It is not

5

medical malpractice; "the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (citation omitted).

That said, "[a] jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett*, 658 F.3d at 759 (quoting *Duckworth*, 532 F.3d at 679). To state a claim, it is sufficient for a plaintiff to allege that the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quotation marks omitted).

The Court will allow plaintiff to proceed on a deliberate indifference claim against Dr. Krembs based on his allegations that Dr. Krembs misdiagnosed plaintiff's severe stomach pain and compounded his severe constipation by prescribing narcotics that plaintiff did not need. Plaintiff may also proceed on a medical malpractice claim against Dr. Krembs.

The Court will not, however, allow plaintiff to proceed on claims against Watts or Obiora. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

Watts was not plaintiff's treating physician, and, according to plaintiff's complaint, she did not misdiagnose plaintiff's condition. As the health services manager, she was entitled to rely on the diagnosis of Dr. Krembs. According to plaintiff's allegations, she worked hard to comfort plaintiff following Dr. Krembs' diagnosis and promised to initiate a request for a compassionate release. In addition, after Dr. Krembs prescribed morphine, Watts allegedly questioned the

prescription in light of plaintiff's constipation. Given that she could not overrule Dr. Krembs' treatment decision, raising the question about his prescription for Dr. Krembs' consideration was all she could do.

With regard to Obiora, she informed plaintiff that he did *not* have cancer, and she stopped the morphine prescription. According to plaintiff, her diagnosis and treatment decisions were correct. She is not responsible for Dr. Krembs' decision to override her decisions.

**NOW, THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendant Dr. Kevin Krembs.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, defendant Dr. Krembs shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that defendants Tina Watts and Catherine Obiora are **DISMISSED**.

**IT IS FURTHER ORDERED** that the agency having custody of plaintiff shall collect from his institution trust account the $312.38 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall

be clearly identified by the case name and number assigned to this action. If plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and case filings to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The Court further advises plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

**IT IS FURTHER ORDERED** that the clerk's office shall return this case to Magistrate Judge David E. Jones.

Signed in Green Bay, Wisconsin, this 23rd day of October, 2017.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court